Opinion filed March 23, 2006












 
 
  
  
 
 




Opinion filed March 23, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-04-00189-CV 

 

                                                    __________

 

                  IN THE INTEREST OF P.D.A. AND B.D.A., CHILDREN

 



 

                                          On
Appeal from the 35th District Court

 

                                                          Brown
County, Texas

 

                                              Trial
Court Cause No. CV 03-01-10

 



 

                                             M
E M O R A N D U M  O P I N I O N

After a jury trial, the trial court entered an
order in accordance with the jury=s
verdict terminating the parent-child relationship between Tammy Andrews and her
two youngest children, P.D.A. and B.D.A. 
On appeal, Andrews raises three issues. 
We affirm.  

After three days of hearing evidence and argument
of counsel, the jury found that Andrews had:

(1) [K]nowingly placed or knowingly allowed the
children to remain in conditions or surroundings which endanger the physical or
emotional well-being of the children.  

 

See Tex. Fam. Code
Ann. ' 161.001(1)(D)
(Vernon Supp. 2005).  

 








(2) [E]ngaged in conduct or knowingly placed
the child with persons who engaged in conduct which endangers the physical or
emotional well-being of the child.  

 

See Tex. Fam. Code
Ann. '
161.001(1)(E) (Vernon Supp. 2005).

 

(3) [F]ailed to comply with the provision of
a court order that specifically established the actions necessary for the
mother to obtain the return of the child who has been in the permanent or
temporary managing conservatorship of the Department of Family and Protective
Services for not less than nine months as a result of the child=s removal from the parent under Chapter
262 for the abuse or neglect of the child. 


 

See Tex. Fam. Code
Ann. '
161.001(1)(O) (Vernon Supp. 2005).  

 

 The jury
also found that it was in the best interest of the children that Andrews=s parental rights to her children be
terminated.  At the trial, there were two
sets of intervenors.  One set of
intervenors was Jesse Danielle Lindley and Alan Wayne Lindley, the foster
parents of P.D.A.  and B.D.A.  The other intervenor was Eve O=Neil O=Connor,
Andrews=s
aunt.  The jury found that the Lindleys
should be appointed permanent managing conservators.  The parental rights of the fathers of P.D.A.
and B.D.A. were terminated in prior proceedings.  Those findings were  incorporated into Andrews=s order of termination in this cause
and are not challenged in this appeal.

Andrews contends that there was a Areasonable alternative of placement
with Intervenor Eve O=Neil
O=Connor.@  We read Andrews=s
brief to raise whether the evidence was factually sufficient to support the
jury=s verdict
that it was in the best interest of the children to terminate Andrews=s parental rights.  Andrews does not contest the sufficiency of
the evidence to support the jury=s
findings on the above three grounds for termination.








Any complaint that evidence is factually
insufficient to support the findings necessary for termination is analyzed
under a heightened standard of appellate review.  In re B.L.D., 113 S.W.3d 340, 353-54
(Tex. 2003).  In a factual sufficiency
review in termination cases, we will give due consideration to evidence that
the fact-finder could reasonably have found to be clear and convincing.  In re C.H., 89 S.W.3d 17, 25 (Tex.
2002); Phillips v. Texas Dep=t
of Protective and Regulatory Servs., 149 S.W.3d 814, 817 (Tex. App.CEastland 2004, no pet.).  We determine whether the evidence is such
that a fact-finder could reasonably form a firm belief or conviction about the
truth of the allegations.  In re C.H.,
89 S.W.3d at 25.  We also consider
whether any disputed evidence is such that a reasonable fact-finder could not
have resolved that disputed evidence in favor of its finding.  In re J.F.C., 96 S.W.3d 256, 266 (Tex.
2002).

The court may order termination of the
parent-child relationship if the court finds by clear and convincing evidence
that the parent engaged in one of the acts or omissions listed in the statute
and that the termination is in the best interest of the children.  TEX. FAM. CODE ANN. '
161.001 (Vernon Supp. 2005); Phillips, 149 S.W.3d at 817.  In determining the best interest of the
children, courts examine a number of factors, including: (1) the desires of the
children; (2) the emotional and physical needs of the children now and in the
future; (3) the emotional and physical danger to the children now and in the
future; (4) the parental abilities of the individual seeking custody; (5) the
programs available to assist the individual to promote the best interest
of the children; (6) the plans for the children by these individuals or by the
agency seeking custody; (7) the stability of the home; (8) the acts or
omissions of the parent that indicate that the existing parent-child
relationship is not a proper one; and (9) any excuse for the parent=s acts or omissions.  Holley v. Adams, 544 S.W.2d 367, 371-72
(Tex. 1976).  The same evidence that
establishes statutory grounds for termination may also establish that the best
interests of the children warrant termination. 
In re C.H., 89 S.W.3d at 28. 
The list of factors is not exhaustive, and a fact-finder is not required
to consider all of the listed factors in making the best-interest
determination. Holley, 544 S.W.2d at 372.  Likewise, the list of factors is focused on
the best interest of the children, not the best interest or desire of the
parent.  See id. 

The Texas Family Code provides that the court
shall place a child removed from the child=s
custodial parent with the child=s
noncustodial parent or with a relative of the child if placement with the
noncustodial parent is inappropriate, unless placement with the noncustodial
parent or relative is not in the best interest of the child. Tex. Fam. Code Ann. ' 262.201(e) (Vernon Supp. 2005).  The provision follows federal guidelines that
are directed toward preserving families and giving preference to an adult
relative Aprovided
that the relative caregiver meets all the relevant State child protection
standards.@ 42
U.S.C. '
671(a)(15)(B)(ii), (a)(19).  Placement
with a non-related caregiver is not a bar to termination.  See In re C.H., 89 S.W.3d at 28.








While evidence presented on the issue of
conservatorship or placement is relevant to the best interest of the children,
it is not determinative as to whether the termination is in the best interest
of the children.  See id.  The trial court has broad discretion in
determining the best interest of the children. 
Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982).

Andrews has five children.  The first three children, not the subject of
this suit, were born roughly a year apart from each other starting when she was
seventeen years old.  Andrews had a four-
or five-year relationship with the father during which he injected
methamphetamine, smoked marihuana, and physically abused Andrews and the
children.  After they broke up, two of
the children went to their paternal grandmother, while a third child went to
Andrews=s mother,
Crystal Bush.  Most of the testimony in
the record indicates that these three children, at various times, lived with
their natural father, their aunt, or one of their grandmothers. 

P.D.A., the fourth child, was removed from Bush=s home in January 2003 for neglect and
endangerment and was placed with foster parents.  B.D.A., the fifth child, was born in May
2003.  She was removed from the hospital
and placed in the same foster home as P.D.A. after she and her mother tested
positive for amphetamines.  P.D.A. also
tested positive for amphethamines at birth but was not removed at that time
presumably because Bush, not Andrews, was taking care of the child. 

Andrews testified that she began to actively use
speed[1]
in 1999, the same year her third child was born.  Andrews testified that her habit became Areal bad@
in 2002 while she was pregnant with B.D.A. 
Andrews was able to get drugs from her own father, who was living with
Andrews=s sister.
After B.D.A. was born, Andrews=s
habit worsened, and she continued to use drugs during her probationary period
for possession of drugs and check forgery. 
Her probation was revoked for failing drug tests and for not reporting
to her probation officer.  As a result,
she was incarcerated in 2003.








P.D.A. was born in March 2002 and removed by the
Child Protective Services Division (CPS) of the Department of Family and
Protective Services in January 2003. 
From the time P.D.A. was born to the time that P.D.A. was taken into
custody by CPS, Andrews was in jail Aquite
often@; and she
agreed that she was Ain
and out so much it=s kind of
hard to keep track of it.@  Andrews had a difficult time at trial
remembering the details of P.D.A.=s
removal and testified that her memory was Afoggy,@ agreeing that it was probably due to
the heavy drug use at the time.  During
the nine months between P.D.A.=s
birth and removal, P.D.A. lived with appellant=s
mother, Bush.  Andrews testified that,
while Bush cared for P.D.A., Bush was physically and mentally unable at times
to care for Andrews=s
children.  Andrews testified that Bush
was unable to care for the children at times because she Awas eating her pills.@ 
Andrews=s mother
took excessive amounts of Xanax.  When
Bush consumed excessive amount of Xanax, Andrews=s
aunt, O=Connor,  would pick up the children from day care and
keep them until Bush Awould
sober up and get mad@
and would get the children back from O=Connor.

 While
P.D.A. lived with Bush, he suffered from asthma which required him to go to the
doctor and to the hospital often.  P.D.A.=s asthma was worsened by Andrews=s mother smoking in the house and using
a wood-burning stove to heat the house, both against the doctor=s advice.  P.D.A. was taken to I.C.U. on one occasion
due to his condition.  Bush was in charge
of giving P.D.A. his breathing treatments. 
Andrews testified that she knew that P.D.A.=s
asthma could be deadly if Bush did not give him the proper breathing
treatments.  Andrews testified that she
tried to check on P.D.A. when she and her mother were not fighting.  When asked whether she was concerned about
P.D.A.=s health,
she responded, AI was
being irresponsible, . . . I knew my sister was there and I also knew that [O=Connor] was always there to check on my
kids for that purpose.@  Just before P.D.A.=s
removal, Bush went to jail, and P.D.A. was under Andrews=s
care while Andrews was pregnant with B.D.A. and using drugs.

 Andrews
never followed up on any of the steps necessary to regain custody of her
children.  Andrews was given a Family
Service Plan, which, among other things, set out what she must do to  regain custody of P.D.A.  Andrews was required to undergo a psychological
evaluation, to get treatment for substance abuse, and to take parenting
classes.  At trial, she was asked, AYou=re
not contesting or not going to argue with me when I say you didn=t do any of the things that were asked
of you?@  Andrews replied, AI
did not do them, no.@  Further, when given a choice between an
eithteen-month state jail term or a nine-month drug treatment program plus
probation, Andrews chose the jail sentence. 
Andrews testified that she chose the jail sentence because she did not
think nine months of drug rehabilitation would have been enough to overcome her
addiction. 








There is evidence in the record that shows that
CPS initially recommended that the children be placed with a relative, O=Connor; but the placement plan changed
after inquiries into O=Connor=s home situation, which showed
instability in the marriage, prescription drug abuse, and shoplifting
charges.  The contents of the social
study showed that circumstances in O=Connor=s marriage and home would not be a
stable, healthy setting for two young children. 
The social study also found that O=Connor
and her husband had a history of domestic violence.  The social study assessment on O=Connor=s
living situation was admitted into evidence without objection.  O=Connor,
although present at trial, did not testify.

Upon reviewing the entire trial record, there was
sufficient evidence to show that Andrews engaged in a pattern of behavior
detrimental to the parent-child relationship. 
A reasonable trier of fact could have formed a firm belief or conviction
that it was in the best interest of P.D.A. and B.D.A. to terminate the
parent-child relationship with Andrews. 
After giving due consideration to the evidence that the trier of fact
could reasonably have found to be clear and convincing, we find that the
evidence is factually sufficient. 
Andrews=s first
issue on appeal is overruled.

In her second issue on appeal, appellant argues
that the trial court erred in admitting Exhibit Nos. 11-20 as violative of Tex. R. Evid. 605 regarding the
competency of a judge as a witness.  The
rule provides that A[t]he
judge presiding at the trial may not testify in that trial as a witness.@ 
Rule 605.  The exhibits are court
orders from either status hearings, adversary hearings, or permanency hearings
during pendency of the termination suit. 
Andrews alleges that the exhibits contain findings of fact and orders
that Arepeatedly
and over a substantial period of time comment . 
. . with the >super
credibility= of
coming from the bench, that the best interests of the children are being served
by removal from the home . . . [and] that all of the determinations and efforts
of the Child Protective Services are correct.@  The orders contain findings that placement
with Andrews or a relative was not in the best interest of the children, that
CPS should be or remain temporary managing conservator of the children, and
that the children should remain in substitute care.  Andrews alleges that Exhibit No. 16, in
particular, a permanency hearing order, is harmful because it contains an order
stating that O=Connor
should not further visit with the children until an intervention was filed or
upon order of the court.








 The Texas
Supreme Court in In the Interest of M.S. held that admitting such orders
as evidence Awas not
in itself inappropriate.@  115 S.W.3d 534, 538 (Tex. 2003).  While the court noted that a judge=s findings of fact as contained in an
order Aare not
technically the same as testimony,@
introducing the findings of fact in the orders comes Afar
too close to >indicating
the opinion of the trial judge as to the verity or accuracy of the facts in
inquiry.=@ 
Id.  The court held that Athe trial judge=s
factual findings . . . should have been redacted, so that the jury could draw
its own conclusion.@  Id. 
The court ultimately rejected the assertion that allowing the unredacted
court orders was reversible error because Athere
is nothing in the record showing that the Department specifically based any of
its arguments on the trial court=s
fact-findings, or that the Department even pointed out the findings to the jury
for its particular consideration.@  Id. 
The Texas Supreme Court further noted that there was Aample other evidence@ in the record that the parent had not
complied with the trial court=s
orders.  Id. at 538-39.  

 We do not
agree that the language in the orders amounts to harmful error requiring
reversal in light of the entire record. 
The jury made two findings:  that
it was in the best interest of P.D.A. and B.D.A. that Andrews=s parental rights be terminated and
that the foster family be appointed permanent managing conservator.  The findings in all ten exhibits complained
of are supported by other evidence in the record for both jury findings.  Further, CPS did not base any of its
arguments on those findings in the exhibits or point them out to the jury for
particular consideration.  Id. at
538.  Andrews failed to show how, in
light of the entire record, the error was harmful.  See Tex.
R. App. P. 44.1(a).  We find that
the error did not result in an improper judgment.  Andrews=s
second issue on appeal is overruled.

In her third issue, Andrews argues that the trial
court erred in admitting Exhibit Nos. 21B25
because the documents, although public records, contain sources of information
and other circumstances that lack trustworthiness.  Under Tex.
R. Evid. 803(8)(C), Afactual
findings resulting from an investigation made pursuant to authority granted by
law@ are admissible as an exception to the
hearsay rule unless they lack trustworthiness. 
Rule 803(8)(C).  The Texas Family
Code mandates that CPS prepare and file both an initial service plan and a
service plan review in every case in which CPS is appointed temporary managing
conservator.  Tex. Fam. Code Ann. ''
263.101, .105 (Vernon 2002). 








Andrews argues that the documents are prepared by
a party to the litigation, CPS, and that those documents should be excluded because
they were prepared for the purpose of litigation, state the contention of a
party opponent, and contain Aan
inherent lack of trustworthiness that can only be resolved before the jury by
normal presentation of evidence through testimony and cross-examination.@ 
CPS asserts Andrews has not met her burden in rebutting the presumption
of admissibility created by the rule. 
CPS also contends that Andrews did not preserve her complaint as to
Exhibit Nos. 21 and 23 because they were admitted without objection.  We agree. 
Tex. R. App. P. 33.1.  Andrews stated in the record that she had no
objection to Exhibit Nos. 21 and 23. 
Andrews=s third
issue on appeal as to Exhibit Nos. 21 and 23 is waived.

The same standard of review stated in the second
issue applies to the admission of Exhibit Nos. 22, 24, and 25.  An appellate court must uphold the trial
court=s evidentiary
ruling if there is any legitimate basis in the record for the ruling.  Owens-Corning Fiberglas Corp. v. Malone,
972 S.W.2d 35, 44 (Tex. 1998).  Andrews
must show the judgment turns on the lack of trustworthiness of Exhibit Nos. 22,
24, and 25 C three
child service plan reviews.  Appellate
courts may look to federal caselaw when interpreting Rule 803(8)(c) because the
Texas rule was modeled after and worded almost identically to the federal rule.  Perry v. State, 957 S.W.2d 894, 897
(Tex. App.CTexarkana
1997, pet. ref=d).  There is a presumption of admissibility for
public records, and the party opposing the admission of the public record has
the burden to show that the evidence is untrustworthy.  Moss v. Ole S. Real Estate, Inc., 933
F.2d 1300, 1305 (5th Cir. 1991).  

The child service plan reviews were generated by
CPS, as mandated by law, and were reviewed by the trial court pursuant to authority
granted by law.  Monica Cole, a
caseworker for CPS, generated the child service plan reviews for P.D.A. and
B.D.A and testified to the contents of the documents.  She testified that the initial plan was to
place the children with a parent or relative and that the plan was changed
later to terminate the parental rights and seek adoption for the children.

A review of the record shows that the contents of
the exhibits were presented through other evidence.  Andrews asked questions and made arguments about
the source of information in the documents in front of the jury.  We hold that it was not error to admit
Exhibit Nos. 22, 24, and 25.  We find
that, in the event there was any error in admitting Exhibit Nos. 22, 24, and
25, it was not harmful; it did not lead to the rendition of an improper
judgment.  See Tex. R. App. P. 44.1(a).  Andrews=s
third issue is overruled as to Exhibit Nos. 22, 24, and 25. 

The judgment of the trial court is affirmed.

 

JIM R. WRIGHT

CHIEF JUSTICE

March 23, 2006 

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











[1]Speed is a related stimulant drug to amphetamine and is
also referred to as methamphetamine.  Merriam-Webster=s Collegiate Dictionary 1199 (rev. 11th ed. 2004).